Good morning, Phil. Thank you. May it please the Court, Justice Gwendolyn for Petitioner. In this Immigration Appeal, Your Honors, the central issue is whether Petitioner's well-founded fear of future persecution was sufficiently rebutted by a preponderance of evidence establishing a fundamental change of circumstances such that Petitioner no longer was presumed to have a well-founded fear. What is of significant concern in the I.J.'s order and decision? Wait a minute. I.J.'s order? I thought that since the BIA wrote its own decision and expressly rejected a major part of the I.J.'s decision that we review the BIA. That's correct, Your Honor. I say it corrected in that sense. Referencing the BIA's decision, they did reverse the I.J. on the adverse credibility finding, but did agree with the I.J. that there was a fundamental change of circumstances such that any presumption that Petitioner had regarding a well-founded fear was sufficiently rebutted. It's significant to note that in this particular case, the Board adopted essentially the I.J.'s finding. They didn't say they adopted it. They said we agree with it. Here's why I'm being technical about that. I want to know what to review. And it looks to me, I came into this oral argument thinking, our job is just to look at the BIA decision and review it. But you keep saying things that make me think our task is to review the I.J.'s decision. And it looks to me like they went out of their way not to adopt it. So if I'm wrong, educate me now so I can get right. I would submit, Your Honor, that we would look at the Board decision with respect to the adoption of the I.J.'s opinion regarding the lack of a well-founded fear. In that sense, I would have to reference the I.J.'s finding in that quote, or rather, excuse me, that the I.J. took, quote, administrative notice of U.S. Department of State materials indicating that conditions have calmed significantly in Punjab since approximately 1993 and in particular since the fall of 1995, close quote. What the BIA says is they say they agree that he doesn't have a well-founded fear, and they give three reasons. His last arrest was in 1996. He has a low political profile. Yes. What they're referring to there, I think, is that he never did join a political  Correct. And that the Congress party, whom he fears, is no longer in control. And I believe the third factor was, Your Honor, the citing of, quote, passage of time since the Petitioner's last arrest or claim last arrest. Yes. I agree with you. But it has to be viewed in the context. Those conclusions have to be viewed in the context of what the I.J. relied on. Well, wait a minute. Why isn't that enough all by itself, just ignoring everything else, so that we are not compelled to conclude that there is no substantial evidence in the record as a whole supporting the BIA's determination? I think that's the way our test is supposed to be. Yes. If I understand Your Honor's question correctly here, I would submit that those conclusions have to have a basis. And the basis in this case would be the I.J.'s reliance on the U.S. Department of State. I don't know if that's true. If he doesn't claim to have been arrested after 1996, then it's undisputed. And if he doesn't claim to have had any more political activity, that he never joined a party, he doesn't claim to have joined a party, and he doesn't claim that the What else is there? Well, he fled the country in 1996. It was 1997 after his last arrest in 1996. I believe that's significant to note. But I believe what I would like to suggest to the Court is that those conclusions have to be related to something in the record. And what is not in the record is an absence of country reports, Department of State country reports. In fact, the I.J. specifically stated, I'm taking administrative notice of U.S. Department of State materials, but there's nothing in the record to indicate what materials she was relying on to support her conclusion that given the current conditions in India at that time and the low political profile and the fact that his last arrest was in 1996, Petitioner's last arrest, and the fact that he conceded that the Congress Party was not in power at that time, they are irretrievably linked together. And Petitioner did not have an opportunity to rebut whatever country condition articles were in administrative notice in the context of linking that to those the conclusion that. Kennedy. Don't they have a Sikh prime minister now, and Congress Party, the party of the Nehru family is out? Roberts. I believe that's correct, Your Honor. However, I believe the Circu case that was cited in a 20A.J. letter by opposing counsel might be instructive here also. There, at least, the I.J. relied on a Department of State report, 1999, I believe, that was not in the record. And this Court concluded that due process affords Petitioner not only notice of what is relied upon in supporting an I.J.'s finding, but an opportunity to be heard and to rebut whatever extra record material was relied on by the I.J. in their decision. Now, does that mean that you would be content if we were to remand for a reopening of the record? Yes. And give the Petitioner an opportunity to determine what extra record material was relied upon by the I.J. and giving the Petitioner a reasonable opportunity to rebut that material. Now, that's not quite what I asked. You said give the Petitioner a chance to rebut what's in the record or what the I.J. relied on. My question was a little broader than that. Would you be seeking an opportunity to reopen so that the United States has an opportunity to introduce into the record country reports and so on? Yes. And give Petitioner also a chance to submit whatever current country reports. In response to that evidence that's been introduced. Exactly. And due process supports Petitioner that opportunity. Yeah. If the I.J. improperly took notice of these country State Department reports, what difference does it make? Because the BIA didn't use that as its basis. It gave three different reasons. Well, I believe that even though the Board specifically did not cite that part of the I.J.'s opinion, they adopted it in the sense that they took those three factors and Those factors aren't tied to the report, are they? Well, I believe that those conclusions They tie it to, I mean, when he says the Respondent's testimony that the Congress Party is no longer in power, they're tying it to the Respondent's testimony, not to the country report. No, but also the other two factors were cited that Given the passage of time, I mean, that's a matter of the calendar. It says he was arrested in 96, and the judge's decision is in what, 2005? 2003, I believe, Your Honor. The BIA 2003? I believe BIA is 2005, and the I.J. Yeah. So they're talking about the passage of time. He was arrested in 96. It's now 2005. That's got nothing to do with the country report. No, but they also cite a third factor, Respondent's low political profile. Okay. Well, that's based on his testimony, not based on the country report. Well, certainly, yes, it is. But I would submit that those conclusions, in addition to the country reports themselves or whatever were relied upon by the I.J., are linked together to support the finding that he no longer has a well-founded fear. I think they're mutually linked. I'm not sure that I've made my question clear. As I recall, there is a big stack of case law that says we review the BIA, not the I.J. There's an exception that says where the BIA simply adopts the I.J.'s opinion, then we review the I.J. Adopt is kind of a magic word, and they often use it. They say we adopt the I.J.'s decision. Here, they didn't say they adopt. They rejected it in some respects and agreed with it in others. So I just can't see how we can review the I.J. where they don't adopt what the I.J. says in view of our body of precedent that says we're not supposed to. In that respect, Your Honor, I would submit that perhaps a remand to the Board to clarify its ruling might be in order here. What's ambiguous? Whether or not they also adopted by inference the I.J.'s reliance on these extra record Department of State reports to support their, you know, excuse me, to support their affirmance of the I.J. with respect to lack of a well-founded fear. Can't the BIA take notice all by itself of what everybody who knows anything about India knows, that the Congress Party is no longer in control? Yes, but it should be. Petitioners should be given a reasonable opportunity to rebut whatever is in the record and to allow extra record evidence. We have a decision about that. Yes. Apparently, it's been reaffirmed many times since, Castillo-Viagra, about administrative notice. And it says that the person's entitled to a fair opportunity to rebut where there's something that might be rebuttable, like the effect of some political circumstance on him individually. But they can take notice without giving them a chance to rebut the fact that water runs downhill. And the Congress Party no longer in control seems more like the water runs downhill. I would submit, Your Honor, in closing that we don't know whether or not these are, quote, undisputable facts or disputable facts that were relied upon by the Board in affirming or adopting, if you will, the IJA's opinion as to whether or not this presumption was overcome. And if, in fact, they are disputable facts that were relied upon, then Petitioners should be given a reasonable opportunity to rebut those disputable facts. And if there are no further questions, I'll stop. Thank you, Your Honor. Counsel. Good morning, Your Honor. May it please the Court, my name is Dennis Wong, and I represent the Acting Attorney General, the Respondent in this matter. I'd first like to apologize to the Court for my very last-minute submission of a 28-J letter. It was in preparing for this case yesterday that I found a case called Circu v. Gonzalez that seemed to have some pertinence to this case. And I sent it to the Court by express mail yesterday for receipt this morning. I've also given it to the clerk this morning and faxed a copy to opposing counsel yesterday once I thought that that case might be important to bring to the Court's attention in abundance of caution. But I think the case is relatively distinguishable. Circu discussed how an immigration judge, two years after the deportation hearing ended, made a decision and in that decision cited to a – took administrative notice of a country report that was created 19 months after the deportation hearing ended. I think there we just reaffirmed Castillo v. Aqua, didn't we? Correct. In that case, and then you remanded it back to it, to the Board, because of the finding of a due process violation. But I think that the Circu case is relatively distinguishable from our facts because the immigration judge's taking of the administrative notice of state materials reflecting calming conditions in Punjab was made on the same day, the last day of the deportation hearing. And Petitioner, through his counsel, had the opportunity to rebut that evidence but did not do so. And more importantly, the Board's decision, which is right now before this panel to review, did not cite to the immigration judge's administrative notice of the state materials in making its decision. Okay. I understand that. But if I understand correctly, what counsel is saying is the BIA says given the passage of time since Respondent's last arrest in 1996, he doesn't have any reason to fear anymore, basically. Yes. In order to understand that, you have to understand what's going on in India now. Well, I think that the evidence – and this goes to – perhaps I can answer that question by also addressing Petitioner's argument regarding the need for country reports, is that Petitioner's own testimony, as you pointed out earlier, that is the evidence that the immigration judge relied upon to reason that Petitioner does not have a well-founded fear of future persecution. I think – What I'm saying is what difference does it make if his last arrest was in 1996 if things haven't changed? The whole premise of the idea that his last arrest was in 1996 is that things are different now. And how do you know they're different now unless you look to the country conditions report? Well, I think it's important to look at the key fact from Petitioner's testimony that reflects the changed conditions, which is the Congress party is no longer in charge. It's undisputed. Yes, but we all know whether it's specific to India or something else, a mere change of what party is in control can mean almost anything. And what the actual on-the-ground consequences are of the Congress power no longer being in charge, I think that's going to be a matter of debate. Well, I think it would be ordinarily, but for the immigration judge's additional analysis, which the board focused on when they talked about the low political profile – in other words, they did the individualized analysis of Petitioner's situation. It was low profile in one sense, but in the other sense, and the BIA specifically reverses the adverse credibility finding on this point, on four separate occasions he's arrested and mistreated. I mean, that may be low profile, but it sounds as though on four separate occasions he was arrested and mistreated. Well, I think that's where the individualized analysis of those four arrests by the immigration judge comes into play, because only one of those four arrests arguably have any political connotation. Petitioner's own brief speaks to how an isolated incident of prosecutable persecution does not rise to the level of persecution which justifies asylum, rather than it needs to be more criminal. I'm not sure you're characterizing correctly what happened in those four things. I mean, they're not doing it by accident. They're not doing it because they think he's sympathetic to the Congress party. They may be making a mistake with respect to that day in which the episode with respect to the sports figures and so on. They may be making a mistake when they think he's sympathetic to somebody else, but nonetheless they've imputed to him something, and as we all know, imputed political opinion for purposes of asylum is the same as actual opinion. Well, if I may, Your Honor, I'd like to just briefly touch upon those four arrests. Yeah, yeah. In the first arrest that took place, which is one in which I'll submit he has the most political connotations, he was arrested and the discussion was about him taking votes away from the Congress party, and then they persuaded him to withdraw from the election. And that's the one where he has the most political connotations. The second arrest, though, Your Honor, is Petitioner's own testimony that sets forth that he was arrested because they questioned him about the folks who were staying with him because they were suspected terrorists. And he also questioned, according to his own testimony, according to his own testimony, that there was a shooting about a year prior related to that sports tournament. And so he sets forth these law enforcement scope questions. In the third arrest, Your Honor, there was a shooting that he describes, a homicide took place of a watchman at a local hospital. And he doesn't dispute that there was a shooting because he says that he heard about it himself later on. And so he's questioned about that. And he also describes in the third arrest, Your Honor, that other folks were arrested, including people from the Congress party. And then in the fourth arrest, which happened over two years later, he was arrested because his neighbor was a suspected terrorist and who was apparently killed, suspected of killing folks, and who was apparently apprehended by the police, but he escaped. I may wish to stop there. I'm quite familiar with the record. The BIA opinion is, to my mind, a little bit ambiguous. But I think what the BIA is saying is that there has been a showing of well-founded fear, but it's been rebutted by the following things. And if I'm correctly, and therefore, in the end, I don't find that we at the BIA, we don't find that there's sufficient legitimate fear of future persecution. Well, if I'm right in understanding that that's what the BIA wrote, well, that means we've got to assume that those four things are enough, unless rebutted, to establish well-founded fear. So the question is, has it been rebutted? Do you agree with me that that's how I should read the BIA opinion? I think that that's one way you can read it, Your Honor. And that's why we took the time to focus. Well, that seems to me how your brief read it, too. Correct. And I took that because the immigration judge does make a statement that, assuming past persecution, that still conditions and the individual situation of the individualized analysis done by the immigration judge. This is a bit of a tricky case for some of the reasons suggested by my two colleagues. I specifically, for the moment, want to focus on Judge Silverman's two questions. First question, he reads all three of those things, nothing since 1996, low profile and change of power into the Congress party, and say, well, all of that's in a sense right here on the record. He says all those things. Fair enough. On the other hand, Judge Silverman's questions to you look at it from a different perspective and perhaps not a technical perspective but a more realistic perspective. Given that he was arrested in 1996 and given that he leaves the country in 1997, this is not one of these circumstances where someone's arrested in 1996, he stays there happily and unmolested for 10 years. No, he leaves. So the only significance of that arrest being so long ago is that something must have changed back home. I think fairly read, the BIA seems to be saying, you know, things have changed. The BIA specifically says the Congress party is now in charge, without much evidence on the record as to what specifically that might mean. Well, he was arrested for the last time in 1996, suggesting that, well, okay, that tells us something. But the only way that could possibly tell us something, given that he left in 1997 is we get some external evidence, external to his testimony that life is different. I don't believe so, Your Honor. I think that the term low political profile encapsulates more of the record than perhaps this panel believes because when asked. But that's the middle of the three factors. First factor is last arrest in 1996, and the third factor is Congress party. Those two, it seems to me, fairly read are talking about, you know, things have changed back home. I think it's balanced, once again, though, with the low political profile because it encapsulates so much of the record. But low political profile, you've already said, is enough to give him, unless rebutted, whatever profile it was, low or not, unless rebutted, it gives us well-founded fear. Well, no, I think it actually goes against his. I think it actually is the substantial evidence that the Board relies upon to find that he did not have a well-founded fear because Petitioner's whole case is that the Congress party is after him because of his political opinion. But the arrests, as I mentioned, don't three out of four arrests don't add up to that. And then when asked towards the end of the hearing on what he was afraid of, why was he afraid of going back, he didn't explain it in terms of the Congress party. He explained it that he was, he felt afraid because he was a Sikh. But yet none of the arrests talk about him being a Sikh. Yeah. Would you object to a remand for reopening of the record in which you were allowed or the government was allowed to introduce the evidence that's now not in the record about country conditions? Well, we would object because we think the evidence is sufficient because of Petitioner's own testimony regarding the changed party leadership. And it's only because it's of the low political nature of what his role, what his job was, he was willing to go back. Do I have this right? This guy never joined a political party? Correct. He never joined a political party and he went back. And he never testified that he joined a political party. Excuse me, sir? He never testified that he joined a political party. Correct. He testified he had not joined any political party and that he actually floated from different political parties because he's a man at Bedell Group. And as actually he testified that he actually recalled voting for the Congress party one time and then actually between the third and fourth arrests actually went to the Congress party for protection. That does not seem to be any sort of evidence that would compel this panel to reverse the finding that he had a well-founded fear of future persecution based on the fact that the BIA seems to have bought the premise that he already established past persecution. Well. I mean, we're beyond that. He did. The board did not explicitly mention past persecution. That's why I concurred or conceded to Judge Fletcher that it's possible to read into the finding of past persecution, but the board explicitly focused on the immigration judge's decision that there was a lack of objective evidence regarding well-founded fear of future persecution. I'm missing something here. Maybe it's in the record and I just overlooked it. Somebody like Benazir Bhutto or Aung San Suu Kyi, any cop in their country is going to know who they are. Cops come and go, but they're all going to know who they are. Helen Sussman in the old days of South Africa. Everybody's going to know who they are. But Tarlakan Singh, I'm thinking it's his case, it's more like if a cop had stopped me in the Yukon Territory for speeding 10 years ago and he seemed to really not like me, I wouldn't worry about driving there because I'd figure, number one, I won't see that cop and he won't see me. Number two, even if he does, he's probably retired. And number three, even if he does and he's not retired, he won't remember me. I'm not Aung San Suu Kyi, just a nobody traveling through the Yukon Territory. And this guy, Tarlakan Singh, seems more like me and the hypothetical Yukon Territory speeding cop. Do we assume, is the law that we just assume that once you're hassled, you go in some secret police black book and forever after they're looking for you? Or does the asylum seeker have to prove that?  The question I have is that one, petitioner's own testimony doesn't describe any sort of guy's questioning during the three arrests that was suggested. It's anything but the gender questioning of terrorists or shootings and so forth. But also in the record, he admits to knowing some terrorists. It doesn't say that he is a terrorist, but he is aware. He had them in their house. Well. He had them in his house, right? Well, that's what he's suspected with. In the record, what are you going to say? I mean, here, if somebody does an armed robbery and somebody says that, well, I saw him in the Kleinfeld house. Cops are going to be around in the Kleinfeld house. They're going to probably question you because they have an interest to find out what information you have to know. There are warrants offered his arrest now? There are. In the record, there are warrants that the immigration judge did not give full credit to because there was insubstantial support. In other words, the petitioner could not testify as fully as to where they came from. But there are warrants for his arrest that were issued, I believe, in 1999. And those warrants did not focus at all on his being a Sikh or on the Congress Party, but rather that he was concealing himself. And the warrants seem to flow from the 1996 arrest after he left the country in 1997 as a result of being a suspected terrorist. So the warrants are out for the crime of harboring, not for politics? For concealing. At least as translated by Petitioner's own documents. Concealing? Himself from the police is how I took it, Your Honors. Unless Your Honors have any questions. Was that a material witness? Excuse me? A material witness warrant in our terms? It didn't say. It just said that he was hiding himself from, it looks like, from police questioning. It wasn't available. And that's how some of the other record evidence describes it, that the police are looking for. Those are 1996 warrants? I believe the warrants were dated 1999. So several years afterwards. And that's, I think, part of the reason why the immigration judge wanted to get a good foundation for where these came from and commented in his opinion how they did not have the usual seals and such and so did not give it full weight. Yeah. Although, on the other hand, his adverse credibility finding has been reversed. So I'm not quite sure what I'd do with his not giving full weight to the arrest warrants because obviously he didn't believe the story, period. Right. I think, though, that the adverse credibility finding, if you look at the Board's opinion, focused on the immigration judge's failure to meet certain standards before you can have an adverse credibility finding, is going to whether or not those inconsistencies went to the heart of this claim. These warrants are for concealing himself from questioning about whether he was harboring terrorists? It didn't say. It didn't go that far, Your Honor. If you'd like, I can look for the record and point to them if the Court was still interested in that part of it. If you happen to remember the page number. Give me a moment, Your Honor. I think I may. I have the warrants. The warrants themselves are 295. Is that not right? I have also a page, under Record 261, which is the translation, Your Honor. And it says here, whereas in the note of case complaint has been made before me and said Tarlequin Singh accused has been returned for warrant of arrest, thereupon issued the said Tarlequin Singh cannot be found, whereas come to my notice. Could you read that again and more slowly? I can't read mine. Sure. I'm sorry, Your Honor. Whereas in the above noted case complaint has been made before me at the said Tarlequin Singh accused and it has been returned for warrant of arrest, thereupon issued the said Tarlequin Singh cannot be found, whereas it has come to my notice that the said accused has absented and is concealing himself to avoid service of the said warrants. So it's a bit ambiguous exactly why they want to see him, but it doesn't say anything about him being a Sikh or because of his fear of a Congress party. Like a Federal UFAP, Uniformed Flight to Avoid Persecution Act. That's the way it seemed like, Your Honor. If the Court has nothing further that you would like me to address, thank you, Your Honor. Counsel, we went way over on your opponent, and even though we also went way over on you, if you want to take up to one minute before we follow, go ahead. I'd just like to point out in response to or follow-up to Judge Fletcher's reference to these four arrests, two of the arrests that are significant to note were because the police supposedly suspected Petitioner of being a terrorist or related to terrorists, especially in particular the third arrest. They wanted to know whether or not he was in any way linked to a militant who supposedly had escaped from police custody and was on the run. How is that a protected ground? I mean, that sounds like legitimate law enforcement activity. Well, it's more imputed political opinion. Why isn't it just a harboring? Excuse me? Why isn't it just harboring? It's a crime in the United States and most states to harbor fugitives. Possibly it could be interpreted as simply harboring, but it doesn't matter if the fugitive is political or your reason for harboring them is political. No, but it's also, it may be reasonable to presume also that that 99 arrest warrant that went out for him was in response to that last arrest and whether or not the police had legitimate motive in investigating him as possibly linked to this terrorist. That could be imputed political opinion also. But the second arrest was also a fabricated arrest because someone had reported him as a suspected militant when there was no ground or basis for that suspicion, and I think that's in the record also. So in that sense, we would submit that those, you know. That was not a false imputation of political opinion by the police, a false imputation by whoever called the police. Yes. Well, and also false police accusation that he was, in fact, a terrorist. And, in fact, that first arrest was also politically motivated, maybe more than the other two, but it was politically motivated. And on that basis, that there is sufficient nexus for a petitioner to be entitled to assault. Thank you, counsel. Thank you. Barlock and Singh v. Gonzales is submitted an oral argument. The remaining cases are not to be argued today, so we are adjourned for the day. All rise.
judges: Kleinfeld, Silverman, W. Fletcher